IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ADMIRAL INSURANCE COMPANY, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>RUPERT R. THOMAS, M.D.; )<br>SSM HEALTHCARE OF OKLAHOMA, )<br>INC., d/b/a ST. ANTHONY HOSPITAL; )<br>MICHELLE METZ, individually and )<br>next friend of A. M., a minor; and )<br>DUSTEN METZ, )<br>)<br>Defendants. ) | Case Number CIV-12-0198-C |

MEMORANDUM OPINION AND ORDER

Plaintiff filed the present action seeking a declaration of rights and responsibilities pursuant to an insurance policy it issued to Defendant Rupert R. Thomas, M.D. Dr. Thomas was sued by the Metz Defendants, who alleged he committed medical malpractice in the delivery of A.M. Upon receipt of the lawsuit, Dr. Thomas sought coverage for the malpractice claim from Plaintiff. Plaintiff denied Dr. Thomas's claim, arguing it had no duty to defend or cover the claim because the alleged malpractice was not within the scope of the insurance policy.

The parties[1] have filed cross-motions for summary judgment with each arguing the undisputed material facts demonstrate an entitlement to relief. After consideration of the parties' briefs, the Court finds there are no material disputes about much of the underlying facts. Those facts are set out here:

Dr. Thomas is a physician practicing in Oklahoma County. Plaintiff originally issued Dr. Thomas a policy covering the period from 12/31/2009 to 12/31/2010. That policy also provided retroactive coverage, providing coverage back to December 31, 2006. Dr. Thomas obtained the policy after working with an insurance agent by the name of Drew Smith. Drew Smith is a general insurance agent who, after speaking with Dr. Thomas about the type of coverage desired, submitted an application to an entity known as Colemont/AmWINS. Colemont/AmWINS submitted Dr. Thomas's request for insurance to various surplus lines carriers, including Plaintiff. Plaintiff responded to Colemont/AmWINS request with a proposal for coverage. Based on Plaintiff's proposal of coverage, Colemont/AmWINS submitted an outline of proposed coverage to Mr. Smith, who, in turn, provided the information to Dr. Thomas. Dr. Thomas then elected coverage through Plaintiff and paid the necessary premiums. It is the scope of coverage provided by Plaintiff's policy that is the subject of the current lawsuit.

---

[1] Defendant SSM Healthcare of Oklahoma Inc., d/b/a St. Anthony Hospital, is not included within the term "parties" in this Order. Although Plaintiff had a summons issued for this Defendant, there is no proof of service. SSM Healthcare has not appeared in this action. As set forth below, the Court will direct Plaintiff to show cause why any claim against SSM should not be dismissed.

Dr. Thomas and the Metz Defendants argue that Plaintiff improperly excluded obstetrics coverage from the insurance policy and therefore is improperly denying coverage for the claims made by the Metzes. In contrast, Plaintiff argues that it responded to a request for coverage for a gynecological practice, provided an insurance proposal regarding coverage for that limited practice, and ultimately wrote an insurance policy for Dr. Thomas covering only gynecology.

## **STANDARD OF REVIEW**

Summary judgment is appropriate if the pleadings and affidavits show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "[A] motion for summary judgment should be granted only when the moving party has established the absence of any genuine issue as to a material fact." Mustang Fuel Corp. v. Youngstown Sheet & Tube Co., 561 F.2d 202, 204 (10th Cir. 1977). The movant bears the initial burden of demonstrating the absence of material fact requiring judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material if it is essential to the proper disposition of the claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the movant carries this initial burden, the nonmovant must then set forth "specific facts" outside the pleadings and admissible into evidence which would convince a rational trier of fact to find for the nonmovant. Fed. R. Civ. P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." Celotex, 477 U.S. at 324. Such evidentiary materials include affidavits, deposition transcripts, or specific

exhibits. Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir. 1992). "The burden is not an onerous one for the nonmoving party in each case, but does not at any point shift from the nonmovant to the district court." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 672 (10th Cir. 1998). All facts and reasonable inferences therefrom are construed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## ANALYSIS

The Metz Defendants aptly frame the question at issue as whether the insurance policy in question is responsible for paying the Metzes' claim against Dr. Thomas. Where Defendants go afoul, however, is in seeking to impose a requirement on Plaintiff to exclude obstetrics from its coverage. Rather, under the applicable law, before coverage exists, the potential claim must lie within the scope of the insurance policy. Dodson v. St. Paul Ins. Co., 1991 OK 24, ¶ 13, 812 P.2d 372, 377. It is only when an insurer seeks to limit the scope of provided coverage that a clear and unambiguous exclusion is required. Id. at n.11.

As with any other issue of contract interpretation, the Court's initial task is to determine if there are any ambiguities in the insurance policy. See Dodson, 1991 OK 24, ¶ 12, 812 P.2d 372, 376 ("The interpretation of an insurance contract and whether it is ambiguous is a matter of law for the Court to determine and resolve accordingly.") As the Oklahoma Supreme Court has stated,

> an insurance policy is a contract. *When its terms are unambiguous and clear*, the employed language is accorded its ordinary, plain meaning and enforced so as to carry out the parties' intentions. In this process we are mindful that

> an insured and insurer are free to contract for that quantum of coverage which one is willing to extend and the other is willing to purchase. The parties are bound by the terms of their agreement and the Court will not undertake to rewrite the same nor to make for either party a better contract than the one which was executed.

Bituminous Cas. Corp. v. Cowen Constr., Inc., 2002 OK 34, ¶ 9, 55 P.3d 1030, 1033 (footnotes omitted). Following these rules, then, the Court turns to the insurance policy in question to determine whether its terms are clear and unambiguous.

The relevant insurance policy is provided as an exhibit to each party's motion and response. The pertinent portion of the coverage provided by the policy is found on page 1 of 7 of that policy. It states that Plaintiff will provide coverage for claims arising from a "medical incident." The policy then defines medical incident as "any act or omission arising out of the: (1) furnishing of 'professional services' by the 'Insured.'" (Defs.' Brief, Dkt. No. 33, Ex. 4, p. 5.) Professional services is defined in paragraph K as "work performed by you for others involving specialized training, knowledge and skill in the **pursuit of the business stated in the Declarations**" (emphasis added). The Declarations page of the relevant insurance policy identifies Defendant Thomas's business as gynecology-major surgery. It does not identify obstetrics as part of Dr. Thomas's business. At his deposition, Dr. Thomas provided his definition of gynecology and obstetrics, noting that gynecology would not include the delivery of a baby. Neither party disputes that there is a clear distinction between the practice of gynecology and obstetrics. This distinction is recognized in case law as well. See Blackstone v. Mass. Mut. Life Ins. Co., Case No. 4:04CV-134-R, 2007 WL 293880 (W.D. Ky. 2007); Weum v. Mut. Benefit Health & Accident Ass'n, Omaha, 54 N.W.2d 20,

22 (Minn. 1952). The Court finds as a matter of law that the terms gynecology and obstetrics are not ambiguous.[2]

The Metzes' medical malpractice claim against Dr. Thomas is clearly a "medical incident" as that term is defined by the policy. Likewise, the claim arose from Dr. Thomas's provision of professional services as that term is defined. However, the malpractice claim arises from an alleged error occurring during the delivery of a baby. Thus, the claim falls within the definition of obstetrics, not gynecology. Because the policy did not insure Dr. Thomas for medical incidents arising from providing the professional service of obstetrics, the claim is not within the scope of coverage provided by the policy. In short, the Court finds as a matter of law that the clear and unambiguous terms of the policy do not provide coverage for the claimed medical incident.

Defendants argue that coverage should exist because of Dr. Thomas's stated desire to Mr. Smith to provide retroactive coverage for obstetrics but coverage limited to gynecology only for the claims going forward. In support of this position, Defendants rely upon testimony from Mr. Smith and documents prepared by either Mr. Smith or

---

[2] This determination renders moot the Metz Defendants' late-filed Motion to Supplement. Because the Court finds the terms of the insurance contract unambiguous, there is no basis to consider evidence outside the four corners of that document. Additionally, as noted herein, any representation by Mr. McGill cannot bind Plaintiff by operation of 36 Okla. Stat. § 1435.3(B). Finally, the Court notes that the Metzes' requested filing is untimely, as the response period to counter Plaintiff's Motion for Summary Judgment has long passed. To the extent Defendants believed the additional information obtained from Mr. McGill was relevant and necessary, they were obligated to request additional time to respond as set forth by Fed. R. Civ. P. 56(d).

Colemont/AmWINS. However, as Plaintiff correctly notes, under Oklahoma law none of the requirements of those documents can be imposed upon Plaintiff. See 36 Okla. Stat. § 1435.3(B) that "Every surplus lines insurance broker who solicits an application for insurance of any kind shall, in any controversy between the insured . . . and the insurer issuing any policy upon such application, be regarded as representing the insured . . . and not the insurer." Thus, the actions of Mr. Smith and Colemont/AmWINS can only be attributed to Dr. Thomas, not Admiral. Consequently, Plaintiff is left relying on the policy language for coverage of the Metzes' claim and, as noted above, that policy does not cover the loss as alleged by the Metzes.

For the reasons set forth herein, Defendant Metzes' Motion for Summary Judgment (Dkt. No. 33) is DENIED and Admiral Insurance Company's Motion for Summary Judgment (Dkt. No. 34) is GRANTED. Plaintiff shall, within 10 days of the date of this Order, show cause why its claims against SSM Healthcare of Oklahoma, Inc., should not be dismissed. Defendants Metzes' Motion for Leave of Court (Dkt. No. 44) is DENIED as moot. A judgment shall issue at the conclusion of the case.

IT IS SO ORDERED this 28th day of January, 2013.

_____
ROBIN J. CAUTHRON
United States District Judge